**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**MELISSA B.,**[1]

       **Plaintiff,**

                              **Case No. 3:21-cv-20713**

    **v.**                          **Magistrate Judge Norah McCann King**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

       **Defendant.**

**<u>OPINION AND ORDER</u>**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Melissa B. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

**I.    PROCEDURAL HISTORY**

On January 21, 2014, Plaintiff filed her application for benefits, alleging that she has been disabled since December 20, 2012.[3] R. 145, 162, 263–64. The application was denied

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).
[3] Plaintiff later amended her onset date to February 8, 2015. R. 926–27.

1

initially and upon reconsideration. R. 173–77, 181–83. Plaintiff sought a *de novo* hearing before

an administrative law judge. R. 184–85. Administrative Law Judge ("ALJ") Henry Kramzyk

held a hearing on February 24, 2017, at which Plaintiff, who was represented by counsel,

testified, as did a vocational expert. R. 89–133. In a decision dated October 19, 2017, ALJ

Kramzyk concluded that Plaintiff was not disabled within the meaning of the Social Security Act

at any time from December 20, 2012, Plaintiff's initial alleged disability onset date, through

December 31, 2016, the date on which Plaintiff was last insured for benefits. R. 13–28 ("the

2017 Decision"). On appeal from that decision to this Court, the matter was remanded to the

Commissioner for further proceedings, pursuant to Sentence 4 of 42 U.S.C. § 405(g). *B*[.] v.

*Comm'r of Soc. Sec.*, 3:18-cv-16445, *Consent Order to Remand*, ECF No. 31 (D.N.J.  Oct. 9,

2020).

On remand, the Appeals Council vacated the 2017 Decision and directed that the matter

be assigned to a different ALJ for further proceedings as follows:

> While the case was pending in federal court, the claimant raised a challenge under
> the Appointments Clause of the Constitution, U.S. Const. Art. II, § 2, cl. 2, to the
> manner in which the Administrative Law Judge was appointed. This case is
> remanded to a different Administrative Law Judge pursuant to the ruling in *Cirko
> v. Commissioner of Social Security*, 948 F.3d 148 (3d Cir. 2020). Any
> Appointments Clause defect is cured by this remand because, on July 16, 2018, the
> Acting Commissioner of Social Security ratified all Administrative Law Judge
> appointments and approved them as her own under the Constitution.
>
> In compliance with the above, the Administrative Law Judge will offer the claimant
> the opportunity for a hearing, take any further action needed to complete the
> administrative record and issue a new decision.

*Id*. On June 8, 2021, ALJ Sharon Allard held a hearing at which Plaintiff, who was again

represented by counsel, again testified, as did a vocational expert. R. 920–59. In a decision dated

August 30, 2021, the ALJ concluded that Plaintiff was not disabled at any time from February 8,

2015, Plaintiff's amended alleged disability onset date, through December 31, 2016, the date on

which Plaintiff was last insured for benefits. R. 894–910 ("the 2021 Decision"). Plaintiff timely

filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On June 14, 2022, Plaintiff

consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C.

§ 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 9.[4] On that same day, the

case was reassigned to the undersigned. ECF No. 13. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g). The United States Supreme Court has explained this

standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this
> Court has said, is more than a mere scintilla. It means – and means only – such
> relevant evidence as a reasonable mind might accept as adequate to support a
> conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks

omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal

quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009)

(citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018

---

[4]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see*

4

*K.K.*, 2018 WL 1509091, at \*4.  The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at \*4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or

without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B.      Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe

impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    THE 2017 DECISION

Plaintiff was 38 years old on December 31, 2016, the date on which she was last insured for benefits. R. 15, 26. ALJ Kramzyk found that Plaintiff had not engaged in substantial gainful activity between her initial alleged disability onset date and that date.  R. 15.

7

At step two, ALJ Kramzyk found that Plaintiff suffered from the following severe impairments: obesity, degenerative disc disease in the cervical spine with cervical radiculopathy, mild degenerative disc disease in the lumbar spine, mild osteoarthritis in the left knee, neuropathy at both wrists with a diagnosis of probable carpal tunnel syndrome, depression, and anxiety. R. 15–16.  ALJ Kramzyk also found that Plaintiff's alleged Epstein-Barr virus, asthma, hypothyroidism, and fibromyalgia were not severe. R. 16.

At step three, ALJ Kramzyk found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 16–18.

At step four, ALJ Kramzyk found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 18–26. ALJ Kramzyk also found that this RFC did not permit the performance of Plaintiff's past relevant work as a resident supervisor, licensed practical nurse, patient care coordinator, activity therapist, and fast food worker. R. 25–26.

At step five and relying on the testimony of the vocational expert, ALJ Kramzyk found that a significant number of light jobs—*e.g.,* jobs as an office helper, a mail clerk, and a label coder—as well as a significant number of sedentary jobs—*e.g.,* jobs as a document specialist, a cutter paster, and a circuit board assembler—existed in the national economy and could be performed by Plaintiff. R. 26–27. ALJ Kramzyk therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from December 20, 2012, her initial alleged disability onset date, through the date on which she was last insured. R. 28.

## IV.    THE 2021 DECISION AND APPELLATE ISSUES

At step one, ALJ Allard found that Plaintiff had not engaged in substantial gainful activity between February 8, 2015, her amended alleged disability onset date, and the date on which she was last insured. R. 897.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: obesity, degenerative disc disease in the cervical spine with cervical radiculopathy, neuropathy at both wrists; degenerative disc disease in the lumbar spine, osteoarthritis in the left knee, bipolar disorder, major depressive disorder, and generalized anxiety disorder. R. 897.  The ALJ also found that Plaintiff's alleged Epstein-Barr virus, asthma, hypothyroidism, and fibromyalgia were not severe. *Id.*

At step three, ALJ Allard found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 897–901.

At step four, ALJ Allard found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 901–09. ALJ Allard also found that this RFC did not permit the performance of Plaintiff's past relevant work as a resident supervisor, licensed practical nurse, patient care coordinator, activity therapist, and fast food worker. R. 908–09.

At step five and relying on the testimony of the vocational expert, ALJ Allard found that a significant number of jobs─ *e.g.,* a merchandise marker, an office helper, and a routing clerk─ existed in the national economy and could be performed by Plaintiff. R. 909–10. ALJ Allard therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from February 8, 2015, her amended alleged disability onset date, through the December 31, 2016, her date last insured. R. 910.

Plaintiff disagrees with the ALJ's findings at steps three, four, and five, and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Initial Brief,* ECF No. 8; *Plaintiff's Reply Brief*, ECF No. 11. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly

applied the governing legal standards, reflected consideration of the entire record, and was

supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to*

*Local Civil Rule 9.1*, ECF No. 10.

## V.   SUMMARY OF RELEVANT MEDICAL EVIDENCE

On March 19, 2014, Christopher Williamson, Psy.D., consultatively examined Plaintiff.

R. 534–36. Dr. Williamson summarized Plaintiff's reported history as follows:

> Ms. B[.] presents for evaluation as a 36-year-old female who is not currently
> receiving SSI disability benefits. She is currently unemployed having last worked
> in December 2012. She had worked as a nurse/LPN and group home manager but
> she reportedly was terminated from her job stating that she was told that she "was
> not doing 100% of her expectations." She reports herself that there was "too much
> going on emotionally around that time." She eventually saw Dr. Gelb in 2012 for
> multiple external stressors, anxiety, and depression. She reports around that time
> her husband reportedly left her. She reports that she is increasingly depressed over
> the last year. However, she denies any suicidal ideation. She was subsequently seen
> however in Crisis Center in May 2013 at Monmouth Medical Center and was
> evaluated and discharged. She reports that she became increasingly depressed and
> was not eating and had bouts of uncontrolled tearfulness and was unable to sleep.
> Her mother took her to the hospital as a result. She is currently prescribed Pristiq
> which is a new medication for her. She is also prescribed Synthroid, Ativan,
> colchicine, and Naprosyn. However, she states that due to financial concerns she
> has difficulty filling her prescriptions. Medically, she has a history positive for
> hypothyroidism.
>
> In addition to the above-noted issues of depression, Ms. B[.] characterized herself
> as increasingly anxious, nervous, and jittery with excessive worries. She reports a
> history of panic attacks over the last year including heart palpitations, difficulty
> breathing, and chest tightness. She states that they are significantly worse when she
> is in a crowd, she gave examples of "running out of a food store" when she becomes
> increasingly anxious and difficulty with crowds. She denies any issues of psychosis
> and/or substance use or abuse.
>
> Ms. B[.] additionally has a history of a left knee injury. She has also been seen by
> a rheumatologist due to ongoing issues of chronic fatigue with speculation of
> fibromyalgia. She had a history of Epstein-Barr syndrome.

R. 534. Dr. Williamson noted the following background information:

> Ms. B[.] currently resides with her mother as her house went into foreclosure last
> year. She is currently married in the process of divorce. She has no children. She is

currently in a relationship. She has one brother and one sister with whom she reports a positive relationship. Her father resides in Florida but left home when she was 9 years old. She reportedly was raised by her mother and stepfather. Academically, she is a high school graduate. She has additionally done vocational trade school and eventually got her LPN. She has an active driver's license. She has limited social contacts. She is increasingly self-isolative and more withdrawn. She has difficulty sustaining day-to-day activities and/or basic chores. She has limited external activities. She has no finances to speak of. She is not currently treating psychiatrically. Her medications have been prescribed by her primary care doctor.

*Id*. Upon mental status evaluation, Dr. Williamson observed as follows:

Ms. B[.] presented for evaluation as a 36-year-old female. She arrived on time as scheduled. She was casually dressed and groomed, appearing her stated age. She was pleasant and cooperative throughout. She had noticeable ambulation difficulties. She presented as obese. There was no evidence of a formal thought disorder, There were no noted compulsions of thinking and/or behavior. Verbalizations were clear, coherent, and goal-directed. Her mood appeared depressed and anxious. Her affect was congruent. She denies any issues of suicidal ideation. She denies any issues of substance use or abuse. She could repeat up to 6 digits forwards and 3 digits backwards. She slowly but accurately completed Serial 7's, subtracting 7 from 100 in reverse order. She could complete simple mathematical calculations of addition and subtraction. Her overall fund of knowledge appeared to be in the average range. Abstract reasoning appeared intact. She was well oriented to time, place and person, as well as recent current events. She could recall 3 out of 3 common objects at 5- and 10-minute intervals.

R. 535. Dr. Williamson noted that Plaintiff "presents for evaluation as a 36-year-old female with a chronic history positive for depression and anxiety. She is increasingly immobilized by her psychiatric condition. She has multiple medical concerns including chronic fatigue." *Id*. He diagnosed major depressive disorder; panic disorder; history of Epstein-Barr, rule out fibromyalgia, chronic fatigue, hypothyroidism, and left knee injury; and chronic medical and ongoing psychiatric needs. *Id*. "Based on my interactions with Ms. B[.], despite her limitations, it does appear that she is competent to handle her own funds at the present time should it be determined applicable. Her overall prognosis remains guarded due to the chronicity of her current symptom presentation." *Id*.

On September 23, 2014, Dr. Williamson again consultatively examined Plaintiff. R. 577–

79. Dr. Williamson summarized Plaintiff's reported history as follows:

Ms. B[.] presents for evaluation as a 36-year-old female who is not currently receiving SSI disability benefits. She is presently unemployed. She previously was employed as an LPN, the last in 2012. She reports that she had initially been injured in 2009, having helped a patient to the bathroom. She states that the patient was falling and she was pulled back, injuring her back, suffering two bulging discs, and injuring her left knee. She had surgery to the knee, as well as physical therapy afterwards, as well as treatment for pain management and injections through Worker' Compensation. She had a Functional Capacity Evaluation, which indicated that she is now unable to lift more than 10 pounds, which negatively impacts her employability. She states that she tried to go back to work but lasted one week. She reports that she just finished treatment in 2012 and 2013.

Ms. B[.] denies any prior psychiatric treatment history prior to the injury. She did see a therapist after the doctor told her she was unable to return to work. She reports that as a result of her injury, her husband left her. She is now currently seeing a psychiatrist, Dr. Gill, in Toms River, over the last six weeks. She is currently waiting on a waiting list with a therapist at the Pollak Clinic of Monmouth Medical Center.

Ms. B[.] reports that she has struggled with increasing issues of depression. She states that on days, she simply has no motivation to get out of bed. She is increasingly self-isolative. She characterized her mood as sad, down, despondent, and hopeless. She denies any issues of suicidal ideation and/or mania. She denies any issues of psychosis and/or substance use or abuse. She does acknowledge that when she gets stressed that she overeats. She reports "bad anxiety." She reports that she has sleep difficulties and panic attacks including heart palpitations, difficulty breathing, and chest tightness. She is unable to tolerate crowds and has to flee a store. She does acknowledge that she had lost 140 pounds prior to this experience and after the injury, she has gained 110 back. She is currently prescribed Ultram, Klonopin, Synthroid, Pristiq, and a generic version of Lexapro. However, she states that she has difficulty affording her medications.

R. 577–78. Dr. Williamson summarized Plaintiff's background:

As a result of her condition, she currently resides with her mother. Her husband left her. She is legally separated. She states that her husband left and "took all my money." She states that "I can't afford to fight it." She has no children. She had two prior miscarriages. She did have a gallbladder give away due to her current condition. She states "I simply lost everything" including her home and her independence. She states "I'm not used to being like this." She finds it embarrassing. She is increasingly self-conscious. She has one brother, age 35 and a half-sister, 18. Her biological father lives in Florida. She states that her father left her at Christmas at the age of 10. She has no current friends or socialization. She is increasingly self-isolative. She does chores as she is able. Academically, she is a

12

college graduate. She has her LPN. She has historically worked in nursing. After the injury, she worked in a group home, which allowed her to accommodate her limitations. However, she became suspended from work after the rehab in the Workers' Compensation case as she is unable to do any type of nursing work. She has no finances to speak of.

R. 578. Upon mental status evaluation, Dr. Williamson made the following observations:

Ms. B[.] presents for evaluation as a 36-year-old female. She arrived on time as scheduled. She was casually dressed and groomed, appearing her stated age. She was pleasant and cooperative throughout. She was noticeably obese. She had noticeable ambulation difficulties. She appeared physically uncomfortable. Her presentation appeared to be credible in nature. Her overall mood appeared depressed and anxious. Her affect was congruent throughout. She denies any issues of suicidal ideation but is simply frustrated by her condition. She could repeat up to 5 digits forwards and 4 digits backwards. She was unable to accurately complete Serial 7s, subtracting 7 from 100 in reverse order. She could complete simple mathematical calculations of addition and subtraction. Her overall fund of knowledge appeared to be in the average range. Abstract reasoning appeared intact. She was well oriented to time, place, and person, as well as recent current events. She could recall 3 out of 3 common objects at 5- and 10-minute intervals.

R. 578. Dr. Williamson characterized Plaintiff as "currently struggling with significant adjustment issues including depression, anxiety, and panic attacks secondary to physical pain and physical limitations and subsequent losses." *Id*. He diagnosed major depressive disorder, severe; panic disorder; chronic pain; obesity; bulging discs; left knee injury; and chronic medical and ongoing psychiatric concerns. R. 579. "Based on my interactions with Ms. B[.], it does appear that despite her limitations, she is competent to handle her own funds at the present time should it be determined applicable. Her overall prognosis remains guarded due to the chronicity of her current symptom presentation." *Id*.

## VI.   DISCUSSION

### A.   Obesity

Plaintiff contends that ALJ Allard erred at step three of the sequential evaluation when evaluating Plaintiff's obesity because she improperly relied on SSR 02-1p, which was rescinded

and replaced by SSR 19-2p, effective May 20, 2019. *Plaintiff's Initial Brief*, ECF No. 8, pp. 6–11; *Plaintiff's Reply Brief*, ECF No. 11, pp. 3–6. Plaintiff agues that this error was not harmless "because it resulted in the ALJ's failure to apply all of the relevant and probative evidence regarding obesity as required by SSR 19-2P and 20 CFR 404.1526 and articulate why relevant and probative evidence regarding obesity was not applied to the listings of the other severe MDIs the ALJ found at Step 2." *Plaintiff's Initial Brief*, ECF No. 8, p. 8; *see also id.* at 9; *Plaintiff's Reply Brief*, ECF No. 11, pp. 3–5. Plaintiff goes on to argue that ALJ Allard's boilerplate sentence at step three addressing obesity is deficient under the requirements of SSR 19-2p, because it fails to consider, *inter alia*, the effect of Plaintiff's obesity on her ability to ambulate effectively as required by Listing 1.00B2b. *Plaintiff's Initial Brief*, ECF No. 8, pp. 9–11; *Plaintiff's Reply Brief*, ECF No. 11, pp. 5–6.

The Acting Commissioner agrees that it is SSR 19-2p that applies to Plaintiff's claim and that ALJ Allard "inadvertently referenced SSR 02-1p" at step three, but the Acting Commissioner nevertheless asserts that this error was harmless because ALJ Allard "cited to language almost identical to that of SSR 19-2p in the same paragraph" and expressly discussed SSR 19-2p at step four when considering Plaintiff's obesity. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 10, pp. 9–10. The Acting Commissioner also denies that SSR 19-2p imposes a specific articulation requirement and that, in any event, ALJ Allard properly considered and concluded that Plaintiff did not carry her burden of showing that she met or medically equaled a listed impairment. *Id*. at 10–11. To the extent that Plaintiff points to evidence in the record regarding Plaintiff's ambulation difficulties, the Acting Commissioner argues that Plaintiff relies on evidence that relates to a period during which she concedes that she was not disabled; the Acting Commissioner also argues that ALJ Allard fully considered

14

Plaintiff's ability to ambulate and reasonably concluded that Plaintiff's difficulty in that regard did not rise to listing level severity. *Id.* at 11–12.

The Acting Commissioner's arguments are well taken. At step three, an ALJ must consider whether the combination of the claimant's medically determinable impairments meets or equals the severity of any of the impairments in the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii). An impairment meets a listed impairment if it satisfies "'*all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Jones,* 364 F.3d at 504 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)) (emphasis in original). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the *overall* functional impact of h[er] unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531 (emphasis added). "[T]he medical criteria defining the listed impairments [are set] at a higher level of severity than the statutory standard" because the "listings define impairments that would prevent an adult, regardless of h[er] age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Id.* at 532 (emphasis in original) (quoting 20 C.F.R. § 416.925(a)). Although an ALJ is not required to use "particular language" when determining whether a claimant meets a listing, the ALJ's discussion must provide for "meaningful review" by a court. *Jones*, 364 F.3d at 505 (citing *Burnett*, 220 F.3d at 120). Accordingly, if the ALJ's decision, "read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing," "[t]his discussion satisfies *Burnett*'s requirement that there be sufficient explanation to provide meaningful review of the step three determination." *Id.*

In 2000, the Commissioner removed obesity as a "listed impairment," but the Court of

15

Appeals for the Third Circuit has recognized that this action "did not eliminate obesity as a cause of disability." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009) (citing SSR 00–3p, 65 Fed. Reg. 31039, 31040–42 (May 15, 2000)). "Rather, the Commissioner has since promulgated a series of SSRs, which indicate how obesity is to be considered under the listings." *Abigail L. v. Kijakazi*, No. CV 21-2275 (FLW), 2022 WL 16362468, at *9 (D.N.J. Oct. 27, 2022) (citations omitted). The Commissioner initially promulgated SSR 00-3p, which "replaced an automatic designation of obesity as a listed impairment, based on a claimant's height and weight, with an individualized inquiry, focused on the combined effect of obesity and other severe impairments afflicting the claimant[.]" *Diaz*, 577 F.3d at 503. "Although SSR 00-3p was superseded by SSR 02-1p, 67 Fed. Reg. 57859, 57859 (Sept. 12, 2002), SSR 02-1p did not materially amend SSR 00-3p." *Id.* (citations omitted); *see also* SSR 00-3p, 65 Fed. Reg. 31039-01 (May 15, 2000) ("[O]besity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a Listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments. It may also be true for other coexisting or related impairments, including mental disorders."). Most recently, SSR 19-2p rescinded and replaced SSR 02-1p, effective May 20, 2019. SSR 19-2p, 2019 WL 2374244, at *5 (May 20, 2019); *see also id.* at n.14 ("We will use this SSR beginning on its applicable date [of May 20, 2019]. We will apply this SSR to new applications filed on or after the applicable date of the SSR and to claims that are pending on and after the applicable date. This means that we will use this SSR on and after its applicable date in any case in which we make a determination or decision. We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions."). Other courts have observed that SSR 02-1p and SSR 19-2p "are largely consistent in their discussion of how

16

obesity should be analyzed[.]" *Heck v. Comm'r of Soc. Sec. Admin.*, No. 1:20CV2133, 2021 WL 6693720, at *10 (N.D. Ohio Dec. 28, 2021), *report and recommendation adopted sub nom. Heck v. Comm'r of Soc. Sec.*, No. 1:20CV2133, 2022 WL 228163 (N.D. Ohio Jan. 26, 2022) (collecting cases); *see also Huntley v. Kijakazi*, No. 1:20CV862, 2021 WL 5834406, at *8 (M.D.N.C. Dec. 9, 2021) (agreeing with the Commissioner that under either SSR 02-1p or SSR 19-2p, "'the ALJ is tasked with explaining how he reached his conclusion on whether obesity causes any limitations' and is warned that 'the combined effects of a claimant's obesity with other impairments may be greater than might be expected without obesity'") (citations omitted).

SSR 19-2p advises that "[o]besity, when established by objective medical evidence (signs, laboratory findings, or both) from an acceptable medical source (AMS), is an MDI [medically determinable impairment]." *Id.* at *2. SSR 19-2p addresses the determination of obesity as a severe impairment, as follows:

> When we evaluate the severity of obesity, we consider all evidence from all sources. We consider all symptoms, such as fatigue or pain that could limit functioning. We consider any functional limitations in the person's ability to do basic work activities resulting from obesity and from any other physical or mental impairments. If the person's obesity, alone or in combination with another impairment(s), significantly limits his or her physical or mental ability to do basic work activities, we find that the impairment(s) is severe. We find, however, that the impairment(s) is "not severe" if it does not significantly limit [a person's] physical or mental ability to do basic work activities.
>
> No specific weight or BMI establishes obesity as a "severe" or "not severe" impairment. Similarly, a medical source's descriptive terms for levels of obesity, such as "severe," "extreme," or "morbid," do not establish whether obesity is a severe impairment for disability program purposes. We do an individualized assessment of the effect of obesity on a person's functioning when deciding whether the impairment is severe.

*Id.* at *3–4 (footnotes 8, 9, 10 omitted). SSR 19-2p also specifically advises how to evaluate obesity under the listings:

> Obesity is not a listed impairment; however, the functional limitations caused by the MDI of obesity, alone or in combination with another impairment(s), may medically equal a listing. For example, obesity may increase the severity of a coexisting or related impairment(s) to the extent that the combination of impairments medically equals a listing.
>
> We will not make general assumptions about the severity or functional effects of obesity combined with another impairment(s). Obesity in combination with another impairment(s) may or may not increase the severity or functional limitations of the other impairment. We evaluate each case based on the information in the case record.

*Id*. at *4. (footnotes 11 and 12 omitted); *see also id.* at n.11 (citing 20 C.F.R. §§ 404.1526 and 416.926). Accordingly, "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." *Diaz*, 577 F.3d at 504; *see also Abigail L.*, 2022 WL 16362468, at *10 ("Although the parties do not dispute that SSR 19-2p rescinded and replaced its predecessor SSR 02-01p, the Commissioner fails to cite a single authority that challenges the applicability of *Diaz*'s meaningful review instruction. Notably, several courts in this district have continued to apply such guidance in the context of SSR 19-2p.") (collecting cases). "For meaningful judicial review, the ALJ must provide a discussion of the evidence and an explanation of reasoning, . . . but we do not 'require the ALJ to use particular language or adhere to a particular format in conducting his analysis[.]'" *Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 765–66 (3d Cir. 2016) (quoting *Jones,* 364 F.3d at 505). Notably, a claimant must demonstrate "*how* [the claimant's] obesity . . . affect[s the claimant's] ability to perform basic work activities," not simply that it could impact such ability. *Carter v. Comm'r Soc. Sec.*, 805 F. App'x 140, 143 (3d Cir. 2020) (affirming denial of benefits where the claimant "does not point to any medical evidence that her impairments, determinable or not, limit her ability to perform work activities") (emphasis in original).

18

In the present case, ALJ Allard identified obesity as one of Plaintiff's severe impairments at step two of the sequential evaluation. R. 897. At step three, the ALJ expressly referred to SSR 02-1p and concluded that Plaintiff's obesity, when considered in combination with her other impairments, neither met nor medically equaled any listing:

> It is noteworthy that although there is no specific medical listing regarding obesity, the undersigned has evaluated the impairment herein pursuant to the extensive and detailed guidelines set forth in SSR 02-lp, including the references in the listings contained in sections 1.00Q, 3.001, and 4.00F. As SSR 02-lp states: "However, we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record. Accordingly, the undersigned has fully considered obesity in the context of the overall record evidence in making this decision.

R. 899. ALJ Allard also considered at step three that Plaintiff did not meet, *inter alia*, listings related to Plaintiff's cervical and lumbar impairments and knee impairment, as follows:

> It was the attorney's contention that the claimant's orthopedic cervical and lumbar impairments meet or equal Medical Listing 1.00B2b. As of the listings for musculoskeletal, on December 3, 2020, the Social Security Administration published final rules, "Revised Medical Criteria for Evaluating Musculoskeletal Disorders," which revise the criteria for evaluating adult disability claims when using the Musculoskeletal Disorders Listings of Impairments (Listings) under Title II and Title XVI of the Social Security Act. These rules will become effective on April 2, 2021 and apply to decisions issued on or after April 2, 2021. These changes are applicable to all new applications, pending claims, and continuing disability reviews. Therefore, in regards to the claimant's musculoskeletal disorders consideration has been given the Medical Listings 1.15, 1.16 and 1.18.
>
> However, regarding the claimant's lumbar and cervical impairments, the requirements of Medical Listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root(s)), are not met. The claimant has degenerative disc disease of the cervical spine with radiculopathy and degenerative disc disease of the lumbar spine. Her Independent Medical Examination of September 8, 2015, with NJ Pain Care Specialists note, the claimant was able to ambulate without an assistive device. She displayed a normal gait, normal tone and strength in all muscles, and normal lower extremity reflexes. Her straight leg-raising test was also negative bilaterally (Exhibit 28F). Similarly, a physical examination of July 13, 2017, indicated some positive clinical findings, i.e., some pain and tenderness in the cervical and lumbar spine, but there was no muscle spasm noted. Range of

19

motion was full and heel and toe walk were normal. A March 6, 2019, physical examination noted neurologic findings of 5/5 strength globally, with no sensory deficits and normal gait (Exhibit 58F).

Regarding Medical Listing 1.16. The evidence shows that the claimant also does not have lumbar spinal stenosis resulting in compromise of the cauda equina, documented by A, B, C, and D: A. Symptom(s) of neurological compromise manifested as: 1. Nonradicular distribution of pain in one or both lower extremities; or 2. Nonradicular distribution of sensory loss in one or both lower extremities; or 3. Neurogenic claudication; AND B. Nonradicular neurological signs present during physical examination or on a diagnostic test and evidenced by 1 and either 2 or 3: 1. Muscle weakness; 2. Sensory changes evidenced by: a. Decreased sensation; or b. Sensory nerve deficit (abnormal sensory nerve latency) on electrodiagnostic testing; or c. Areflexia, trophic ulceration, or bladder or bowel incontinence; or 3. Decreased deep tendon reflexes in one or both lower extremities; AND C. Findings on imaging or in an operative report consistent with compromise of the cauda equina with lumbar spinal stenosis; AND D. Impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least one of the following:

1. A documented medical need for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands; or

2. An inability to use one upper extremity to independently initiate, sustain, and complete work related activities involving fine and gross movements, and a documented medical need for a one-handed, hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand. Although the claimant testified that she has used a rolling walker that was prescribed in 2017, the medical evidence of record does not support the medical necessity for a walker as, as noted above, there are no apparent findings to support limitations with ambulation.

Therefore, I find that the claimant does not meet or equal Listing 1.16.

The claimant's arthritis in the knee does not meet or equal the criteria of listing 1.18 for abnormality of a major joint(s) in any extremity, as she does not have an impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least one of the following: 1) a documented medical need for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands; or 2) an inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements, and a documented medical need for a one-handed, hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand; or 3) an

> inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements. An Independent Medical Examination of September 8, 2015, with NJ Pain Care Specialists noted, the claimant was able to ambulate without an assistive device, displayed a normal gait, normal tone and strength in all muscles, and normal lower extremity reflexes. Her straight leg-raising test was also negative bilaterally (Exhibit 28F).

R. 898–99. At step four, ALJ Allard again specifically considered Plaintiff's obesity, expressly citing SSR 19-2p, and considered Plaintiff's subjective complaints of back and joint pain as well as her ability to ambulate without an assistive device with a normal gait and normal tone and strength in all muscles. R. 902–04, 906–08. Accordingly, even if ALJ Allard's discussion at step three could have been more substantial, she nevertheless properly considered Plaintiff's obesity at step three and at subsequent steps when, after recognizing Plaintiff's obesity as a severe impairment, she recognized that she must also consider, when determining Plaintiff's RFC, the effect of Plaintiff's obesity on her other impairments and found that none of Plaintiff's impairments, whether considered singly or in combination —including Plaintiff's musculoskeletal impairments—met or equaled a listed impairment, and specifically and in detail considered Plaintiff's musculoskeletal impairments and normal gait. *See id.*; *see also* SSR 19-2p; *Diaz*, 577 F.3d at 504; *Woodson*, 661 F. App'x at 765–66; *Jones*, 364 F.3d at 505 (stating that if the ALJ's decision, "read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing," "[t]his discussion satisfies *Burnett*'s requirement that there be sufficient explanation to provide meaningful review of the step three determination"); *Abigail L.*, 2022 WL 16362468, at *10 (finding that, "notwithstanding the ALJ's scant analysis of Plaintiff's obesity at step three, the ALJ's opinion, read in its entirety, permits meaningful review of Plaintiff's obesity"); *cf. Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 263 (3d Cir. 2006) (finding that the ALJ's conclusory

21

statement in step three was harmless where, "in reviewing the voluminous medical evidence available to us, we found abundant evidence supporting the position taken by the ALJ, and comparatively little contradictory evidence"); *Steven James F. v. Comm'r of Soc. Sec.*, No. 1:20-CV-14183-NLH, 2022 WL 2703009, at *4 (D.N.J. July 12, 2022) ("The fact that the ALJ did not repeatedly cite to Plaintiff's obesity thereafter [after saying he considered the claimant's obesity as required by SSR 19-2p] does not undermine the ALJ's decision as the ALJ is not required to discuss every tidbit of evidence in the record. . . . Looking at the ALJ's opinion holistically in light of the record as a whole, the Court is satisfied that the ALJ considered Plaintiff's obesity and applied the correct legal standard.").

Although the parties do not dispute—and this Court agrees—that ALJ Allard erred in relying on SSR 02-1p, the Court is not persuaded that this error was harmful and requires remand. As noted above, other courts have observed that SSR 02-1p and SSR 19-2p are generally consistent in their discussion of how obesity should be considered. *Heck*, 2021 WL 6693720, at *10; *Huntley*, 2021 WL 5834406, at *8. For instance, at step three in this case, ALJ Allard pointed to a provision in SSR 02-1p advising how to evaluation obesity under the listings that is nearly identical to a similar provision in SSR 19-2p. *Compare* R. 899 (noting that SSR 02-1p instructs that "we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record") (internal quotation marks omitted), *with* SSR 19-2p, 2019 WL 2374244, at *4 ("We will not make general assumptions about the severity or functional effects of obesity combined with another impairment(s). Obesity in combination with another impairment(s) may or may not increase the severity or functional

22

limitations of the other impairment. We evaluate each case based on the information in the case record."). The Court is unaware—and Plaintiff fails to explain how—application of SSR 19-2p at step three would have required a different result where, as previously discussed, ALJ Allard expressly considered Plaintiff's obesity along with her musculoskeletal impairments and in light of her ability to ambulate effectively. Accordingly, "[i]n light of those nearly identical provisions, Plaintiff has not demonstrated that the ALJ's error in applying SSR 02-1p prejudiced his claims in any way." *Huntley*, 2021 WL 5834406, at *8 (detailing similarities between provisions in SSR 02-1p and SSR 19-2p).

Finally, although Plaintiff cites to other portions of the medical record that she believes support her argument that she meets or medically equals Listing 1.00B2b, *Plaintiff's Initial Brief*, ECF No. 8, pp. 10–11; *Plaintiff's Reply Brief*, ECF No. 11, pp. 5–6, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). For the reasons already discussed, as well as for the reasons discussed later in this decision regarding Plaintiff's ability to ambulate, this Court concludes that substantial evidence supports ALJ Allard's reasoning at step three. The Court therefore declines Plaintiff's invitation to re-weigh the evidence or to impose Plaintiff's or this Court's own factual

determination. *See Chandler*, 667 F.3d at 359; *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Circ. 2014) (stating that a reviewing court "must not substitute [its] own judgment for that of the fact finder").

### B.   Listings 12.04 and 12.06

Plaintiff also challenges ALJ Allard's finding at step three that Plaintiff's mental impairments neither meet nor medically equal a listed impairment, specifically Listings 12.04 and 12.06. *Plaintiff's Initial Brief*, ECF No. 8, pp. 11–20; *Plaintiff's Reply Brief*, ECF No. 11, pp. 3–6. This Court disagrees.

Listing 12.04 addresses depressive, bipolar, and related disorders, and Listing 12.06 addresses anxiety and obsessive-compulsive disorders. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04 and 12.06 (eff. Apr. 2, 2021). In order to meet either of these listings, a claimant must meet the Listings' paragraph A criteria and either the paragraph B or paragraph C criteria of the listings. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06.[5] The paragraph B criteria are met when a claimant has an extreme limitation of one, or a marked limitation of two,[6] of the

---

[5] The ALJ did not expressly discuss the paragraph A criteria of the listings, R. 899–901, and Plaintiff does not challenge this omission. *See generally Plaintiff's Initial Brief*, ECF No. 8; *Plaintiff's Reply Brief*, ECF No. 11. Remand is not required on this basis because the ALJ determined that Plaintiff's mental impairments did not in any event satisfy the paragraphs B or C criteria of the listings. *See Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (stating that "the omission of the 'paragraph A' analysis does not render the ALJ's decision unreviewable" where "[i]t is quite plain that the ALJ's decision rested on the absence of both 'paragraph B' and 'paragraph C' criteria[.]"); *Lewis v. Comm'r of Soc. Sec.*, No. 15CV06275, 2017 WL 6329703, at *8 (D.N.J. Dec. 11, 2017) ("In reviewing a case, 20 C.F.R. Part.404, Subpart P indicates that a claimant must prove both Paragraph A and B criteria. The ALJ simply chose to proceed with a full analysis of Paragraph B, and, upon determining that Paragraph B was not satisfied, chose not to address Paragraph A as there would be no point given that the criteria for Paragraph B had already failed.").

[6] A "marked" limitation means that the claimant is seriously limited the ability to function independently, appropriately, and effectively and on a sustained basis in a specified area. § 12.00A2b, 12.00F2d. An "extreme" limitation means that the claimant is unable to function

24

following four mental functional areas: understand, remember or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id*. at §§ 12.04B, 12.06B.

At step two, ALJ Allard determined that Plaintiff suffered the severe impairments of, *inter alia*, bipolar disorder, major depressive disorder, and generalized anxiety disorder. R. 897. ALJ Allard determined at step three that Plaintiff's impairments, whether considered singly or in combination, neither met nor medically equaled any listing. R. 897–901. In determining whether Plaintiff's mental impairments met or medically equaled Listings 12.04 or 12.06, ALJ Allard specifically explained why she found that Plaintiff had only mild or moderate limitations in the four broad areas of functioning under the paragraph B criteria—with citation to the record, including opinion evidence—and why Plaintiff did not meet the criteria of Paragraph C of those listings,[7] reasoning as follows:

> The severity of the claimant's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.04 and 12.06. In making this finding, the undersigned has considered whether the "paragraph B" criteria were satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.
>
> In understanding, remembering or applying information, the claimant had a moderate limitation. The claimant reported difficulty with memory. During the March 2014 psychological consultative examinations with Dr. Williamson, she was able to complete serial 7's accurately, albeit slowly. She was also capable of performing simple mathematical calculations and recalling 3/3 objects immediately and after a five- and ten-minute delay. When examined by Dr. Williamson in September 2014, while the claimant was unable to complete serial 7's as she had at her prior evaluation, she was able to perform simple mathematical calculations. Her

---

independently, appropriately, and effectively on a sustained basis in a specified area. *Id*. at §12.00F2e.

[7] Plaintiff does not challenge the ALJ's consideration of the paragraph C criteria.

25

overall fund of knowledge appeared to be in the average range. The claimant was able to recall 3/3 objects immediately and then after a five- and ten-minute delay. She also arrived on time to the evaluation and she did not display any evidence of a formal thought disorder or compulsions of thinking (Exhibit 16F). Additionally, progress records are replete with notations that the claimant's recent and remote memory were intact (Exhibits 55F). In addition, at the hearing, the claimant was well spoken and there was no evidence of memory loss. She was able to explain her symptoms, limits, and medical treatment in detail with an ability to understand and provide appropriate responses to questions. The claimant's moderate limitation in this area is accounted for in the residual functional capacity, which limits the claimant to understanding and executing simple and routine tasks which are not at an assembly line pace and making simple decisions and adapting to occasional changes in essential work tasks, which requires less understanding and memory.

In interacting with others, the claimant had a moderate limitation. Here, the claimant did not report any significant problems getting along with others but she reported isolative behaviors. She reported she can follow spoken instructions (but sometimes ha[s] to re-read what is being asked) and written instructions (Exhibits 4E and 8E). The medical evidence shows she had a good rapport with providers and was described as alert, pleasant and cooperative (Exhibits 51F, 53F, 55F, 59F, 60F, 61F, 64F, 65F and 66F). Additionally, she did not display evidence of psychomotor agitation (Exhibits 52F-55F). The claimant was pleasant and cooperative with me during the hearing (Hearing Testimony). However, the claimant reports displaying isolative behaviors. This supports a finding that the claimant has a moderate limitation in this area, which is accounted for in the residual functional capacity assessment, which limits the claimant to having no more than occasional contact with coworkers and supervisors and no more than occasional contact with the public, but not with tasks that involving direct customer service.

With regard to concentrating, persisting or maintaining pace, the claimant had a moderate limitation. The claimant contends that she has problems with concentrating and focusing. The claimant concentrated, persisted and maintained pace to answer questions during the hearing (Hearing Testimony). The claimant's moderate limitation in this area is accounted for in the residual functional capacity, which limits the claimant to understanding and executing simple and routine tasks which are not at an assembly line pace and making simple decisions and adapting to occasional changes in essential work tasks, which requires less concentration.

As for adapting or managing oneself, the claimant had experienced a moderate limitation. The claimant reported difficulty with memory, focusing, concentrating and completing tasks. She reported issues with high levels of anxiety. The claimant is diagnosed with bipolar disorder, major depressive disorder and generalized anxiety disorder. Nonetheless, the claimant has shown the ability to regulate her emotions and control her behavior, as there was no significant and ongoing evidence of her psychiatric symptoms in the medical evidence or during the hearing

(Hearing Testimony). The undersigned concludes that the claimant's mental symptoms and medications reduce her ability to sustain concentration, but she is still able to understand and execute simple and routine [tasks], within the residual functional capacity outlined below.

Because the claimant's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria were not satisfied.

The undersigned has also considered whether the "paragraph C" criteria were satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. There is no evidence that the claimant has marginal capacity, or a minimal capacity to adapt to changes in h[er] environment or to demands that are not already part of h[er] daily life. The claimant is able to adapt to changes and demands that are not a part of her daily life, such as scheduling and attending appointments. The claimant is also able to take care for her personal needs, which requires an ability to adapt and manage changes.

R. 899–901. Substantial evidence supports the ALJ's reasoning in this regard. *See* 20 C.F.R. Pt.

404, Subpt. P, App. 1, §§ 12.04, 12.06; *see also T.N.D. v. Comm'r of Soc. Sec. Admin.*, No. CV

21-13898, 2022 WL 2235883, at *4–5 (D.N.J. June 22, 2022) (finding substantial evidence

supported the ALJ's finding that the claimant had moderate limitations in the four broad areas of

functioning under paragraph B where, *inter alia*, "the ALJ acknowledged Plaintiff sometimes

had memory problems and 'borderline judgment,' but also that his memory was normal at

times," and the finding was "based on the record as a whole, including" records that showed

"Plaintiff exhibited normal concentration"); *L[.]v. Kijakazi*, No. CV 21-06732 (FLW), 2022 WL

1683840, at *13 (D.N.J. May 26, 2022) (finding that "the ALJ's Paragraph B determinations

were based on substantial evidence" where, *inter alia*, the ALJ found the claimant had moderate

limitations in concentrating persisting, or maintaining pace where the claimant "was able to live

independently at times, go outside on his own, watch television, manage his money, and was

able to cook and clean" and` "during various examinations, the claimant had intact

concentration, attention, and memory").

Plaintiff, however, challenges the ALJ's consideration of the paragraph B criteria, apparently arguing that ALJ Allard in the 2021 Decision "acknowledges" that evidence cited by Plaintiff "is relevant and probative **but fails to apply and articulate how the additional evidence alters or does not alter the first ALJ determination [in the 2017 Decision] plaintiff was moderately limited in all 4 prongs**." *Plaintiff's Initial Brief*, ECF No. 8, p. 19 (emphasis in the original); *Plaintiff's Reply Brief*, ECF No. 11, pp. 6–9. In advancing this argument, Plaintiff cites Dr. Williamson's two consultative examinations as well as evidence extending from August 2016 through February 2019. *Plaintiff's Initial Brief*, ECF No. 8, pp. 13–19. Setting aside the fact that much of that evidence either predates Plaintiff's amended alleged disability onset date of February 8, 2015, or relates to a period long after the lapse of her insured status on December 31, 2016, much of this evidence simply reflects Plaintiff's subjective complaints to her providers. *See id*. Significantly, the mere memorialization of a claimant's subjective complaints in a medical record will not serve to transform those complaints into objective findings or a medical opinion. *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 879 (3d Cir. 2005) ("[A] medical source does not transform the claimant's subjective complaints into objective findings simply by recording them in his narrative report[.]") (summarizing *Craig v. Chater*, 76 F.3d 585, 590 n. 2 (4th Cir. 1996)); *Morris v. Barnhart*, 78 F. App'x 820, 824–25 (3d Cir. 2003) ("[T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion.") (citations omitted); *Famularo v. Comm'r of Soc. Sec.*, No. CV 20-1655, 2021 WL 613832, at *7 (D.N.J. Feb. 17, 2021) ("[A] a claimant's own subjective report about her symptoms[] does not become a medical opinion by virtue of being recorded in treatment notes.") (citations omitted). Other evidence cited by Plaintiff includes a provider's diagnoses. *See Plaintiff's Initial Brief*, ECF No. 8, pp. 13–19. However, it is well-

established that a diagnosis alone does not establish the degree of impairment flowing from that

diagnosis. *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) ("A diagnosis

alone, however, does not demonstrate disability.") (citing *Petition of Sullivan*, 904 F.2d 826, 845

(3d Cir. 1990)); *see also Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The

claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the

functional limitations that result from that impairment. A diagnosis of impairment, by itself, does

not establish entitlement to benefits under the Act"). Notably, Plaintiff simply asserts that, if ALJ

Allard had "actually applied" this evidence in the 2021 Decision, Plaintiff "would have moved

up one level in at least 2 prongs and been markedly limited in the needed two prongs to be

disabled per set at Step 3." *Plaintiff's Initial Brief*, ECF No. 8, p. 20; *see also Plaintiff's Reply

Brief*, ECF No. 11, p. 9 (same). Plaintiff, who bears the burden at step three, merely points to this

evidence and does not even identify which two of the four broad areas of functioning she intends

to address, nor does Plaintiff explain how these diagnoses, conditions, and other evidence

establish that she has a marked or extreme limitation in any of the four broad areas of

functioning under the paragraph B criteria. *See Plaintiff's Initial Brief*, ECF No. 8, pp. 11–20;

*Plaintiff's Reply Brief*, ECF No. 11, pp. 6–9; *see also Padgett v. Comm'r of Soc. Sec.*, No. CV

16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated

no analysis of the evidence, the Court does not understand what argument Plaintiff has made

here. Plaintiff has done no more than thrown down a few pieces of an unknown jigsaw puzzle

and left it to the Court to put them together. The Court does not assemble arguments for a party

from fragments."). In any event, "[t]he presence of evidence in the record that supports a

contrary conclusion does not undermine the [ALJ's] decision so long as the record provides

substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d

Cir. 2009) (citations omitted); *see also Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) ("In determining whether substantial evidence exists, this court cannot re-weigh the evidence or substitute its judgment for that of the ALJ. . . . Thus, we will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied.") (citations omitted); *Chandler*, 667 F.3d at 359 ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard].").

To the extent that Plaintiff suggests that ALJ Allard should have reached different findings as to the paragraph B criteria in her 2021 Decision than those made by ALJ Kramzyk in his 2017 Decision—or that ALJ Allard's finding of moderate limitations in the four broad areas of functioning was fatally flawed—that argument is not well taken. As set forth above, the Appeals Council vacated the 2017 Decision and ordered a different ALJ to "take any further action needed to complete the administrative record and issue a new decision." R. 1003; *see also Davis v. Comm'r Soc*. Sec., 849 F. App'x 354, 358 (3d Cir. 2021) (noting that "when the Appeals Council 'remands a case . . . after a court remand, it generally vacates the entire administrative law judge (ALJ) decision, and the ALJ must consider all pertinent issues de novo'") (quoting HALLEX I-2-8-18). That is precisely what ALJ Allard did in the 2021 Decision at step three of the sequential evaluation process when assessing Plaintiff's mental impairments: the ALJ specifically considered the record evidence, including evidence from Dr. Williamson's consultative examinations, and explained why that evidence established that Plaintiff had no more than a moderate limitation in each of the areas of functioning listed in paragraph B of the listings. R. 899–901.

In short, this Court concludes that substantial evidence supports ALJ Allard's consideration of the evidence at step three, including her consideration of Plaintiff's obesity and her finding that Plaintiff's mental impairments neither meet nor medically equal any listing, including Listings 12.04 or 12.06.

### C.   Plaintiff's Challenge Based on Her Ability to Stand/Walk

Finally, Plaintiff argues that ALJ Allard failed to resolve the following conflict at step five of the sequential evaluation: "The Vocational Expert testified the jobs he identified at Step 5 required a minimum of 4 out of 8 hours of standing and walking a day. Substantial evidence supports a finding P1aintiff cou1d not stand and walk 4 hours a day. The ALJ failed to resolve the conflict created by not evaluating all of the relevant and probative evidence to determine if the plaintiff can stand or walk the required 4 hours a day." *Plaintiff's Initial Brief*, ECF No. 8, p. 21; *Plaintiff's Reply Brief*, ECF No. 11, pp. 9–11 (same). Plaintiff's argument is not well taken.

At step five, an ALJ must decide whether the claimant, considering the claimant's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). It is the Commissioner who bears the burden of proof at step five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Johnson v. Comm'r of Soc. Sec*., 529 F.3d 198, 205 (3d Cir. 2008) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005)). "'Advisory testimony from a vocational expert is often sought by the ALJ for that purpose [of determining whether other jobs exist in significant numbers in the national economy that the claimant could perform] . . . and factors to be considered include medical impairments, age, education, work experience and RFC.'" *Id*. at 205–06 (quoting *Rutherford*, 399 F.3d at 551). "Testimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed

by the ALJ to the vocational expert." *Podedworny,* 745 F.2d at 218. "Usually, the ALJ will ask whether a hypothetical claimant with the same physical and mental impairments as the claimant can perform certain jobs that exist in the national economy." *Zirnsak,* 777 F.3d at 614 (citing *Podedworny*, 745 F.2d at 218). "While 'the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations,' . . . '[w]e do not require an ALJ to submit to the vocational expert every impairment alleged by a claimant.'" *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (quoting *Rutherford*, 399 F.3d at 554). "[T]o accurately portray a claimant's impairments, the ALJ must include all 'credibly established limitations' in the hypothetical." *Zirnsak,* 777 F.3d at 614 (citing *Rutherford*, 399 F.3d at 554). Credibly established limitations are limitations "that are medically supported and otherwise uncontroverted in the record." *Rutherford*, 399 F.3d at 554. "Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason." *Id*. (citations and internal quotation marks omitted). A "vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the [ALJ's hypothetical] question accurately portrays the claimant's individual physical and mental" limitations. *Podedworny*, 745 F.2d at 218. Stated differently, "[a] hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).

  In the case presently before the Court, the hypothetical question posed by ALJ Allard to the vocational expert assumed a claimant with Plaintiff's vocational profile and the RFC found

by the ALJ. R. 901, 943–44. The vocational expert responded that the jobs of merchandise marker, office helper, and routing clerk—all light exertional jobs—could be performed by such an individual. R. 944–45. Plaintiff, however, contends that substantial evidence establishes that she cannot stand or walk for the four hours required by these jobs and she argues that, in fact, she uses a walker when she walks. *Plaintiff's Initial Brief*, ECF No. 8, pp. 21–24; *Plaintiff's Reply Brief*, ECF No. 11, pp. 9–10. According to Plaintiff, "[t]he VE [vocational expert] further testified if the Plaintiff needs an accommodation of a walker to stand or walk the required 4 hours there would be no jobs available. The ALJ did not resolve the conflict created by the VE testimony." *Plaintiff's Initial Brief*, ECF No. 8, p. 21 (citing R. 909–10, 949–50). Plaintiff identifies 21 pieces of record evidence that she believes "is relevant and probative to the plaintiff's ability to walk and stand for 4 out of 8 hours" that ALJ Allard should have analyzed. *Id*. at 22, 25; *Plaintiff's Reply Brief*, ECF No. 11, pp. 10–11. Plaintiff further argues that "[u]ntil the conflict is resolved, the Record cannot be considered to be fully developed" and that ALJ Allard's error in this regard is not harmless because Plaintiff cannot stand or walk for four hours a day, which, according to vocational expert testimony, would eliminate all jobs identified by the vocational expert. *Plaintiff's Initial Brief*, ECF No. 8, p. 25; *see also Plaintiff's Reply Brief*, ECF No. 11, pp. 10–11.

Plaintiff's arguments are not well taken. As a preliminary matter, Plaintiff's criticism is based on her counsel's hypothetical questions to the vocational expert—hypotheticals that contained greater limitations than those found by ALJ Allard in the RFC, *i.e.*, an inability to walk/stand at least four hours a day and required the use of a walker that would render at least one arm completely unusable. R. 901, 948–50; *Plaintiff's Initial Brief*, ECF No. 8, pp. 23–26; *see also Plaintiff's Reply Brief*, ECF No. 11, pp. 9–11. Plaintiff's criticism in this regard therefore

boils down to an attack on the ALJ's RFC determination at step four rather than to an unresolved conflict at step five.

A claimant's RFC is the most that the claimant can do despite the claimant's limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, the ALJ is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c); *see also Chandler,* 667 F.3d at 361 ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford*, 399 F.3d at 554; *see also Zirnsak,* 777 F.3d at 615 (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, ALJ Allard determined that Plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally climb ramps and stairs, and stoop; cannot kneel, crouch, crawl, climb ladders, ropes or scaffolds. The claimant must avoid concentrated exposure to temperature extremes of heat, cold, wetness, humidity, fumes, odors, dusts, and gases; and poor ventilation; must avoid wet, slippery and uneven surfaces, vibration and must avoid hazards, including moving mechanical parts or unprotected heights. The claimant cannot operate foot controls with the left lower extremity. The claimant can frequently reach, handle and finger. The claimant can understand and execute simple and routine tasks which are not at an assembly line pace; have occasional contact with coworkers and supervisors; have occasional contact with the public

but not with tasks that involve direct customer service; and can make simple decisions and adapt to occasional changes in essential work tasks.

R. 901. In making this determination, ALJ Allard detailed years of record evidence, including, *inter alia*, examinations that generally revealed that, although obese, Plaintiff had normal strength and tone in her muscles and was able to ambulate without an assistive device and displayed a normal gait; and evidence that Plaintiff maintains her activities of daily living, has no difficulty managing funds, and performs chores in spite of body aches and pains. R. 903–04, 906–07. In light of this evidence, ALJ Allard also discounted the severity of Plaintiff's subjective complaints, R. 902 (finding that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision"), 907 (finding that Plaintiff's "symptoms are not at the level of severity and impact on the claimant's ability to engage in work activity as reported by the claimant), a determination that Plaintiff does not challenge. In the view of this Court, this record contains substantial evidence to support ALJ Allard's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff's insistence that other record evidence is probative of her alleged limitation in her ability to walk and, apparently, supports additional limitations in the RFC regarding these limitations, *Plaintiff's Initial Brief*, ECF No. 8, pp. 22–24, does not militate a different result. As a preliminary matter, some of the citations Plaintiff provides do not stand for the proposition for which they are cited. *See Plaintiff's Initial Brief*, ECF No. 8, pp. 22 ("2) On June 20, 2015, Centra State Medical Center diagnosed lumbar radiculopathy and conducted a FCE and opined Plaintiff had an extreme limitation in walking and was limited to maximum of 30 minutes of

standing. The physical exam revealed a "major loss" in active lumbar range of motion. Tr. 1134[,]" but R. 1134 contains no such evidence), 23 ("5) Plaintiff weighs 380 pounds and also suffers from serve orthopedic impairments to the neck and left knee. Tr. 7[,]" but R. 7 contains no such evidence; "6) Plaintiff ambulates with an abnormal gait and a limp. Tr. 28[,]" but R. 28 contains no such evidence; "10) On the Date Last Insured Plaintiff weighed 378 pounds. Tr. 7[,]" but R. 7 contains no such evidence). The Court will not hunt through the voluminous record in this case to find evidence that Plaintiff believes would support additional restrictions in the RFC. *See Atkins v. Comm'r Soc. Sec.*, 810 F. App'x 122, 129 (3d Cir. 2020) ("'[J]udges are not like pigs, hunting for truffles buried in the record.'") (quoting *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006)) (internal citation omitted)); *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("[T]his Court has frequently instructed parties that they bear the responsibility to comb the record and point the Court to the facts that support their arguments.").

In addition, most of the cited evidence relies on Plaintiff's subjective complaints contained in her hearing testimony or self-reported information or complaints recorded by practitioners in treatment notes. *See Plaintiff's Initial Brief*, ECF No. 8, pp. 22 – 24 ("4) On August 8, 2016 CPCBH concluded after injuring her neck and back she was unable to return to work that required any standing or walking. Tr. 1196."; "9) Plaintiff gained 160 pounds in the 2 years after the 2/8/15 MVA. Tr. 95-96."; "11) On May 13, 2020 PCP Dr. Sridar documented severe low back pain that radiated down the legs. Tr. 1539"; "12) On February 27, 2020 PCP Dr. Sridar documented severe low back pain, bilateral hip dysplasia in both legs, can't walk, has to hold onto the walls to stand. Tr. 1477"; "13) Plaintiff testified 'my gait is lopsided. I walk with a limp. Sometimes I drag my leg.' Tr. 116"; "14) Extensive standing makes the pain worse. Tr. 117"; "15) Plaintiff can walk for 5 minutes with a limp before needing a break. Tr. 120";

"16) Plaintiff can stand in 1 position for 15 minutes. Tr. 120"; "17) The walker was prescribed by Dr Glastein and Dr. Friedel. Tr. 120, Tr. 938"; "18) After the 2015 motor vehicle accident Plaintiff uses the walker at all times. Tr. 938"; "19) Plaintiff uses the walker at all times when ambulating in her house and out of her house. Tr. 936"; "20) The 2015 motor vehicle accident caused severe difficulty going from a standing to a sitting position. She installed a lift chair in her home that helps her stand up. Tr. 941"; "21) After the 2015 motor vehicle accident plaintiff's weight reached 408 pounds. Tr. 935"). As previously discussed, the mere memorialization of a claimant's subjective complaints in a medical record does not transform those complaints into objective findings or a medical opinion, *Hatton*, 131 F. App'x at 879; *Morris*, 78 F. App'x at 824–25; *Famularo*, 2021 WL 613832, at *7. Moreover, as previously noted, ALJ Allard's discounting of Plaintiff's subjective complaints enjoys substantial support in the record. R. 902–07.

Even if this Court were to accept, for present purposes only, Plaintiff's cited evidence that Plaintiff believes is probative of her limitations in walking, *see Plaintiff's Initial Brief*, ECF No. 8, pp. 22–24, this evidence does not warrant remand. First, this Court has already explained that, as long as the substantial evidence standard has been satisfied, the Court must uphold ALJ Allard's decision even if there is contrary evidence that would justify the opposite conclusion. *See Johnson*, 497 F. App'x at 201; *Chandler*, 667 F.3d at 359; *Hatton*, 131 F. App'x at 880. Moreover, and notably, an "ALJ need not account for use of a hand-held assistive device in an RFC assessment unless that device is medically required." *Mundo v. Kijakazi*, No. 1:21-CV-517, 2023 WL 2632810, at *5 (M.D. Pa. Mar. 24, 2023). SSR 96-9p addresses the need to find that such a device is "medically required":

> **Medically required hand-held assistive device**: To find that a hand-held assistive device is medically required, *there must be medical documentation establishing the*

> *need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).* The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

SSR 96-9P, 1996 WL 374185, at *7 (S.S.A. July 2, 1996) (emphasis added). "A claimant's testimony that a cane has been prescribed is not enough to meet this burden." *Mundo*, 2023 WL 2632810, at *5 (citations omitted). Similarly, a prescription for an assistive device with "no discussion of its medical necessity" is "insufficient to support a finding that [an assistive device] was medically necessary." *Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002) ("Other than that [a prescription and a checked box that an assistive device was required for ambulation], there are multiple references to the fact that appellant uses a cane but no discussion of its medical necessity. The evidence presented by appellant was insufficient to support a finding that his cane was medically necessary."). In the present case, Plaintiff relies on her own testimony that "[t]he walker was prescribed by Dr. Glastein and Dr. Friedel. Tr. 120, Tr. 938[.]" *Plaintiff's Initial Brief*, ECF No. 8, p. 24. However, those citations reflect Plaintiff's testimony from the first administrative hearing on February 24, 2017, R. 120 (which, curiously, does not reflect testimony regarding such prescription or those providers), and her testimony from the second hearing on June 8, 2021, R. 938. Nowhere does Plaintiff point to a prescription that requires an assistive device for ambulation and that describes the medical necessity for the device or the circumstances for which it is needed. *See generally Plaintiff's Initial Brief*, ECF No. 8; *Plaintiff's Reply Brief*, ECF No. 11. Based on this record, Plaintiff has not shown that ALJ Allard erred when she failed to find that Plaintiff was unable to walk/stand for four hours out of an eight-hour work day or that she required an assistive device to ambulate. *See* SSR 96-9P,

1996 WL 374185, at *7; *Howze*, 53 F. App'x at 222; *Mundo*, 2023 WL 2632810, at *5.

Accordingly, the fact that Plaintiff's counsel posed to the vocational expert alternative

hypothetical questions that contained more limitations than did the RFC actually found by ALJ

Allard, R. 901, 948–50, is irrelevant when the RFC ultimately found by the ALJ is supported by

substantial evidence. *Cf. Rutherford*, 399 F.3d at 554; *Podedworny*, 745 F.2d at 218; *Chrupcala*,

829 F.2d at 1276 ("A hypothetical question must reflect all of a claimant's impairments that are

supported by the record; otherwise the question is deficient and the expert's answer to it cannot

be considered substantial evidence.").

     In short, for all these reasons, the Court concludes that the ALJ's findings regarding

Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the

record, including her consideration of Plaintiff's ability to ambulate effectively without

assistance.

## VII.   CONCLUSION

     For these reasons, the Court **AFFIRMS** the Commissioner's decision.

     The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42

U.S.C. § 405(g).

     **IT IS SO ORDERED.**


Date:  May 19, 2023                      *s/Norah McCann King*
                                        NORAH McCANN KING
                             UNITED STATES MAGISTRATE JUDGE